Good morning. May it please the court. Kasdan Mitchell on behalf of defendants. Plaintiffs' challenges to defendants' EPA-directed cleanup efforts give rise to federal jurisdiction on two independent grounds. First, plaintiffs' claims challenge conduct by defendants undertaken at the direction of the EPA. EPA, not defendants, initiated cleanup activities at the Institute facility in 1984. And for more than three decades, EPA has directed and supervised those activities. What was the direction? I didn't understand that. In other words, was there actually a circle-type direction to clean it up? It was pursuant to their corrective action authority under RCRA. I thought that I may be wrong. I'm asking this for information purposes, but I thought as the new law came into effect, there was new demands on cleanup and the whatever we call them, Dow or Union Carbide, fully undertook and sought a permit to clean up itself. It made an application to do that under the law, didn't it? That's not exactly right, Your Honor. Back in 1984, it was EPA that initiated the corrective action plan. That's what the district court found. It's also reflected in many of the EPA documents. It's on the EPA's website. I know, but did they actually issue a directive order? They did. There's an extensive process for corrective action plans under RCRA and in conjunction with CERCLA. The first thing is you have to do testing and come up with a proposal. Now, at certain parts of that process, the reason I'm asking for this is it sounds to me like they did do testing and did come up with a process and they've been working all along. It seems to be in good faith. Nobody seems to be challenging that. But the question I'm focusing on, and it's probably not determinative, but the question I'm focusing on is the distinction between Union Carbide's carrying out an effort that is the government's effort and it's assisting the government versus complying with the law. As you know, 1442 makes that distinction between compliance with the law and helping the government carry out its own purpose and act. It seems to me if there to clean up, that might be different than Union Carbide's recognizing that it was under a new law and now had to do the testing and comply with the law. I understand the question, Judge Niemeyer, and I think you're right that our ordinary compliance activities, like the way in which we dispose of waste in the first instance, are part of our ordinary compliance obligations. But here it was different. So there is a mechanism under RCRA for landowners to undertake voluntary cleanup efforts. That is not what happened here. So here, EPA was the one who initiated the corrective action plan by identifying contaminants on the Institute Facilities property. And they are the ones that directed us to engage in testing and compliance measures. And we did ultimately acquiesce in that. But I don't think it should make a difference for purposes of 1442 if the government is doing it itself, if it hires a contractor to do it. Counsel, can I ask what I hope is a related question? So I thought that I understood, and I'm asking because I'm not certain about this, that RCRA's corrective action program or plan was limited to entities that either had a permit or were seeking a permit. Is that correct? I think that's correct. It really isn't an issue here because we've had a permit for decades. But it makes a difference in the context that you're saying the EPA is the one that initiated this. And maybe this is just a play on words. They initiated the corrective action, but your company, and I'm not trying to get into this whole successor issue, but your company effectively, they're the ones that had the permit or sought to get a permit. And so in a real sense, they're the one that's initiating a permit process. And the EPA comes back and says, well, in order to get a permit or to keep your permit, you have to do this corrective action. Isn't that the right way of thinking about the timeline here? So we had a pre-existing permit before EPA began telling us that we needed to be under the corrective action framework. And I don't think the fact that it's ultimately incorporated into a permit as opposed to a contract or a consent decree or something else changes the nature of the relationship between EPA and defendants. So it was EPA that said you need to undertake these corrective measures. I understand that, but I'm just asking the factual question. I understand your argument. You want to say a permit's like a contract. I totally get that. And we'll talk about that. But as a factual matter, the relationship here is you have a permit. The EPA says to keep that permit or to get a new one, whatever it is, you must undertake this corrective action. And so it's part of the permitting process. And then we can talk about whether that matters or not, but that's the way to think about the relationship between the EPA and your company is that as a permitor and permittee. As a general matter, that's right. But the permit that we have- What is the permit? Is the permit a permit to pollute? Because they are statutes that authorize activities where you can pollute to a certain degree. Or is it a permit to clean up and comply with the law? So our pre-existing permit, the one that pre-existed EPA's initiation of the cleanup activities was to maintain the site and to have solid waste and hazardous waste disposal units. And it governed the way in which we were going to dispose of those. And just to- When was that issued, that permit? It was issued back in, I believe, the 40s. Although it became a RCRA permit in the 70s when RCRA was passed. And I think this just a little bit of statutory background may be helpful here. So RCRA, when it was first enacted in the 70s, EPA didn't even have broad remedial authority. It was not until 1984 when the EPA was able to undertake the kind of remediation activities that are taken with respect to this property. And so it's- Yes, we are a permittee. And we're the landlord owner and we're operating pursuant to a permit. But the corrective action work that we're doing is independent of that. Now, in 2017 and 2018- Wait, I'm sorry. Help me understand. So I was with you right until you said, but we're a permittee, but the corrective action is independent of that status. Where I thought we talked earlier that the corrective action was limited to those who were permittees or those seeking permits, right? So help me understand how the corrective action is actually independent instead of, I thought what we said was, is that it is actually dependent upon. So let me be a little more precise, Judge Richardson. You're right that they're able to institute corrective action measures against us because we're a permittee. But it was not until a few years ago that the corrective action plan was actually incorporated into our permit. So I think you're right that the relationship here is a government agency and a permitted company. But the corrective action plan was parallel to that. Maybe that's a more accurate description. Although now it has been incorporated. There's now been final agency action, at least conditional final agency action with respect to our cleanup efforts. And that has been incorporated into our permit. So for present day purposes, the corrective action plan and the remedial plan is a part of our existing and continuing permit. And so if I may just respond a little bit to the notion that because we're a permittee, that changes the nature of the relationship here. And I don't think that it should principally because the federal government under CERCLA has taken on the responsibility of cleaning up contamination and the direction that EPA. But it didn't take that step, did it? It didn't. Its activities in this case are activities of giving effect to the regulation under RCRA. It's supervising the cleanup effort and the monitoring that your client is proposing. And your client is reacting to the regulation, albeit a very complex and sophisticated regulation. But in other words, I'm trying to get at the notion of whether your company is assisting the federal government in carrying out something the federal government is doing or whether you're complying with law, because I think that is the issue under 1442 removal. I mean, this doesn't address obviously the 1331 issues, but I think the case, the main argument in this case is under 1442, isn't it? I think we think that we have grounds under both, but just to focus on the 1442 issue for present purposes. So the reason that we're assisting the government and carrying out its responsibilities is because the government has undertaken the responsibility for environmental cleanup when you have contamination. And although it was able to accomplish its objectives through RCRA, because we agreed to help and to work with them for the past 30 years to carry out those objectives, should not make a difference for purposes of whether we're acting under the direction. No, but it depends on whether the government is functioning as a regulator or functioning for itself. In other words, we've had a case where a contractor is putting asbestos and Navy prescribed items. The asbestos was specified by the federal government and the we said that that person was assisting the government in having those material, that material. But in this case, the question is, are we assisting the government or is the government enforcing a law with which the company has to comply? And to me, that is the core distinction that has to be made, uh, under, uh, uh, 1442a analysis. That's right. Your honor. And our position is that the government is carrying out its responsibility to clean up contamination and it is using the RCRA mechanism, but this is not just a book of rules that we're complying with. I'm sorry. RCRA does not direct the government to clean up. It regulates the public, your company it's regulating, and it authorizes the government to enforce that. CERCLA allows the government to clean up, or it can impose that responsibility on the public. But it seems to me to be more, to be fairer to this particular case, we have to find out what was the government doing in this case? What was its activity? And was your company activity an effort to assist the government in doing its deal? And the question is, where was the, where was the responsibility under RCRA for the government to clean up? So I think you have to look at cleanups in the broader context. So in the 1990s, Then you get into conduct that's not before us. This has never been declared a CERCLA site, or this is not a situation where the government has said, we're going to clean it up. Will you help? That's totally different. So your honor, I don't think it should, it should be different for purposes of 1442. So the reason I said to look at the broader context is because in the early 1990s, EPA promulgated a rule that governed the intersection between RCRA sites and the CERCLA national priorities list. And what EPA said there is, although we could list RCRA sites on the national priority list, we're going to, we think it's a better use of federal resources to try to accomplish that objective through the landowners. And so if we have a willing and cooperative landowner, we'll wait until they abandon or decide that they're no longer going to be cooperative before we'll list them on the national priority list. But that doesn't change the government's underlying obligation to clean up the contamination. And here, the fact that they've enlisted the private party to do it and that we've acquiesced in that doesn't change the fact that they're directing the actions that we took or did not take with respect to the remedial plan specifically. And that's different from- Counsel, can I ask a slightly different question? So this is, I get the argument you're making. I want to sort of get your response on another one before your time ends. So you're sort of relying on its responsibility, which is this language from Watson versus Philip Morris, where they talk about performing a job that the government would have had to perform. Tell me why I don't that section of Watson to be expressly limited to private contracting. And we do not have a contract here. You might claim it's analogous to a contract, but we don't have a contract. And Justice Breyer seems to be quite consistent in saying that this is an exception for private contractors. That's Judge Niemeyer's opinion with the Navy boilers. And similarly here, they're talking about the Winters decision, right? But those are private contracts, right? Where there's a contracting relationship, not a permittee relationship. So first of all, I don't think you can read Watson to say that private parties can only remove in the government contractor relationship. Maryland versus SOFR involved a private chauffeur. Of course, but I'm talking about the section, you relying on a section in Watson, and it obviously runs through all the alcohol cases, right? And it tells us all about the dangers that we ought to be concerned about, right? But with the section you're relying on is itself limited expressly to private contractors. No? Chief Judge Gregory, may I respond to the question? I see my time has elapsed. Judge Richardson, so that part of Watson is explaining why not all government contractors satisfy 1442, but I don't read that as saying that's exclusively a test with respect to government contractors. So here where you have the federal direction kind of at every step of our remedial efforts, the question then becomes, well, are we just complying or are we doing something that is not related to a governmental task? And because the federal government has taken on the responsibility for cleaning up environmental contamination, I think that passage in Watson should apply to context outside the government contractor context, because it shows that we are carrying forth assisting the government and carrying out its tasks. Chief Judge Gregory, may I reserve my remaining time for rebuttal? Yes. Yes, you may. Thank you. Mr. Hogan. Good morning, your honors. It's great to see you. And may it please the court. This suit involves state law claims filed in state court by a state actor arising from the defendant's contamination of West Virginia State University's property. Although the claims involve pure questions of state law, the defendants somehow seek to pull them into federal court under the federal officer removal and based on federal question jurisdiction. But the case is about contamination, not the cleanup. And the district court rightly remanded the case to state court for three reasons. First, it correctly concluded that the defendants are not acting under a federal officer simply because they are a permittee required to comply with the rules and regulations of RCRA. And second, under the third prong of the acting under test, there's no causal nexus between the contamination that gives rise to the state's claim and any federal authority related to the cleanup. Second, the ruling comports with the general purpose of the federal officer of removal. Let me ask you, this is a very general question. And it probably doesn't resolve any of the particularized questions which we have to answer, which are really 1442 and 1331. But you essentially have a company working with the federal government complying with the EPA laws, EPA satisfied with what they're doing, they've reached full agreement. And you're now bringing a state lawsuit that potentially could impose a sanction that is different or inconsistent with what the federal government is authorized under federal law. How do we handle something like that? So with respect to federal officer removal, it goes to the nature of the relationship. And it depends on whether the private actor is acting under the subject guidance and control of a federal officer. And the way that we have- I understand all that. I don't want the legal argument in 1332. I want to understand how we're going to have a state judgment come out that's inconsistent with the federal approval. And how do we handle that? Just generally, and then you can bring it back to 1442 if you want, but there's an underlying tension here. Because since 1984, the company has been working closely with the federal government, been complying, they've worked out plans, they're doing testing, they've assessed the risks, and everybody's satisfied with what's going on. And the company is fully complied. Now, the state cause of actions at risk of imposing a sanction quite different and probably inconsistent. And what comes in, in my question, probably subliminally is the supremacy notions or preemption notions or whatever. The idea is, how do we handle this first, there's not much conflict at all between the state law claims and the EPA approved permit, which by the way, was issued in 2019, two years after we filed the state lawsuit. And the reason that there's no conflict there is that, I mean, first of all, limiting state court action conflicts with the Supreme Court's decision in Atlantic Richfield versus Christian, where even under a surplus site, the local landowners were able to bring state action for remediation that was over and above what the EPA had approved for a superfund site that has been the source of a great amount of contamination in Montana. And they said it didn't strip the state courts of state law causes of action that arise under the state law rather than arising under the CERCLA or a cause of action that arises under RCRA. And again, as you noted, as part of the RCRA permit, the facility has the obligation to address releases of hazardous waste. And in doing so, they have the discretion, just like they have the discretion in how they comply with the permit, they have the discretion to propose a corrective measure. And in doing so, the EPA then looks to whether that corrective measure proposal meets the minimum requirements of RCRA. That's it. And so, and here they proposed an environmental covenant on the university's land saying you can't use this land, you can't use the groundwater. And the EPA said, sure, that doesn't by itself pose a risk to human health or the environment. That's the test. That's what EPA is looking at. It has nothing to do with the state law claims that go to the university's use of its own property, how it sees fit. And quite frankly, under the federal question argument, what's the difference in the state law claims that the university brings here for the property and dump 16 loads of gravel onto their property? It wouldn't pose a threat to human health, but it would be a trespass, it would be a nuisance, and it would prevent the university from using their property as they see fit without incurring significant additional costs. And I think that that's how we deal with that tension there. And the fact that it's also a state act or filing a state law claims in state court, the notion of comedy certainly supports keeping, allowing the state to bring such claims in state court. So in getting back to the acting under question, the court, the federal court, the district court got it right. Because, I mean, let's look at the permit, the 1991 permit. Actually, let me back up. In 1984, the house passed the solid waste, an amendment to RCRA and the solid waste and hazardous material requirements. And so all that was happening in 1984 was the same thing that's been happening. You have to comply with the law, the law changed, the permits are going to change. And in 1988, the facility started operating under a new permit that reflected new regulatory regime. And in the 1991 permit, these permits, they're applied for, for the privilege of conducting certain business for profit, in this case, making chemicals, which have all kinds of useful purposes, sure, but they're not acting under the federal officer or the federal government in doing so. The permits are, and I point you to JA 231, where the 1991 permit begins. It says, and I quote, it's based on the assumption that the information provided to the EPA by the permittee is accurate. So the EPA is not coming in and imposing some sort of requirements on the permittee beyond the regulatory regime. And it, in fact, authorizes the state, the West Virginia DEP, and that's on the next page, JA 232, to administer, enforce, and implement its own permit. And as a RCRA permit holder, the defendants, they have to comply with section 6924U, which, as I mentioned earlier, requires in the event of a release of hazardous material or hazardous waste, they have to submit to the EPA, again, for approval, documentation that characterizes the release, and proposes corrective measures. And so the industry has the discretion here to present the EPA with its plan that is not going to result in a risk to human health or the environment. And shouldn't come as any surprise, industry has an interest in doing what will be the most cost effective for them, right? And in this instance, imposing a restrictive covenant on the university accomplishes that in one sense, but it also deprives the university of the ability to use its land as it wishes. And there's no power under the EPA, as the defendant suggests in their reply brief, to impose that restrictive covenant on a private party. It would be like a reverse condemnation. And CFR 264-101, section C, contemplates this. The regulations contemplate such a circumstance. They say that section C says, subsection C says that when there's a release beyond the facility's boundaries, that where necessary, the party does have to engage in cleanup and remediation. But if they're unable to obtain, and this is a quote, if they're unable to obtain the necessary permission to undertake such actions, they're not relieved, now I'm off script, they're not relieved of all responsibility to clean up the release that's migrated. And the EPA contemplates, and I quote, onsite measures to address such releases in circumstances where they can't get the consent needed to impose their corrective measures plan. And so, this is not a case of direct authority imposed by the federal government. It's compliance, it's regulation. Every actor in this industry space gets one of these permits and has to act in accordance with the permit, which almost every section of the permits that are issued mirror or cite to the regulatory, the relevant regulatory regime to make it clear to the permittee where it can find the authority for the actions that it needs to take. And Judge Niemeyer, it reminds me of the express scripts case that we just addressed in a 28J letter. I mean, that's the sort of case where a private contractor is acting under a federal officer, in this case, the Secretary of Defense and the Department of Defense, to fulfill a statutory obligation that the government itself has to provide medical care to its members. And there's nothing of the sort here. There's no contract, there's no agency relationship, there's no payment made to Dow to accomplish some governmental objective. They're simply complying with the law as they engage in their for-profit business to make and create chemicals and bring them to market. And as a result of the law, got to clean the mess up that is made. And that also brings me to the federal question jurisdiction. The states have an absolute right to bring state law claims in their state courts. And this is not one of the exceptional circumstances where there are state law claims that are masking some federal cause of action. The question is not whether the plaintiffs could have possibly brought a RCRA claim under the citizen suit. Maybe they could have, but they didn't. And this court has long recognized that the plaintiff is the master of their complaint. And this isn't some... Let me ask you, doesn't the savings clause in RCRA sort of answer that for you on your... In other words, doesn't it preserve state causes of action? Yes, absolutely. It expressly does. And savings clause, just like as the opposite to explicit preemption provisions in many statutes, savings clauses strike the balance in favor of the states and the state courts and state causes of action. And that's exactly what the savings clause does here. And again, I would point to the Atlantic Richfield versus Christian decision. That was even in a circular circumstance, the Supreme Court said that it doesn't strip the state courts of jurisdiction to hear claims arising under state law. And I would also note with the federal question jurisdiction argument that the defendants make, they say it looks just like a RCRA claim, but they make that argument for the first time on appeal. The district court noted, and I quote, conspicuous in its absence, defendants do not cite any federal statutes that govern a purported federal cause of action. And you can look at the briefing below, it's in the district court docket 24 and 27. And they don't mention RCRA, they just cite a bunch of circular cases. And so that's what the district court dealt with. And Judge Copenhaver said, this isn't a circular case. And these circular comparison, these circular cases don't hold up. And it's telling that there's not a single case that defendants can point this court to that reaches the solution or the conclusion that they suggest here. The opening up, and I think this court's, well, let me back up. The Supreme Court's decision in the BP versus Baltimore case highlights the need for a close and careful reading and sticking to the existing test that requires a special or unusually close relationship for federal officer removal. Because now, if the court were to rule in favor of the defendant's view on this, or the appellant's view on this, any entity that is operating under a federal permit, any entity that's operating under a complicated statutory regime is going to be able to make a colorable argument that they're acting under a federal officer. And then we'll be able to shoehorn in any other bases for removal to get appellate review. And the long-standing policy and purpose behind these limited bases for appellate jurisdiction of removal decisions is because cases shouldn't be held up on esoteric questions of federal jurisdiction that have nothing to do with the merits of the case. And if finding that the defendants are acting under a federal officer here would blow that statute wide open. And just addressing the last thing I wanted, that I forgot to mention, was the artful pleading doctrine. Courts have recognized the Mikulski Court, which is cited in the briefing, and the question is whether there is complete federal preemption on the causes of action, which there is certainly not here. And although the defendants may have a colorable federal preemption defense, they can make that in state or federal court. It doesn't much matter. Both courts are obviously competent to deal with questions of limited preemption. And this is not a case where there is complete federal preemption. The RCRA Savings Clause makes that very clear. And if the court doesn't have any further questions, I will turn it back over to Ms. Mitchell. Thank you, Mr. Hogan. Ms. Mitchell, you reserve your time. Your Honors, if I could just make a few points in rebuttal. First, counsel discussed how this is just a part of our permit. And I think it's important for the court to understand that not all permit conditions are created equally. And finding federal jurisdiction here is not going to sweep in the right for any federal permittee or even any environmental case to come into federal court. Instead, there's a distinction that RCRA itself draws between its corrective action plan that it initiates and that it directs. And here, not even all cleanups would be subject to federal officer jurisdiction. It's just cleanups that are initiated by the federal government. And we're able to show, as we have, the close relationship between the federal government and the actions that we took with respect to the property. And I think it would a perverse result to say that a landowner who acquiesces in the demand that EPA places on it with respect to cleanup, rather than abdicate its role, can be deprived of its federal forum to hear its concededly colorful federal defense. So we would urge the court to reverse on the grounds of 1442. Can I make sure I understand that argument? So your point about acquiescence is that you acquiesce to the demands. The other option for you was to stop making chemicals, right? I mean, that's the other. You could say, well, I don't want a permit anymore. And now that might bring in other obligations, but that's not acquiescence, right? That's getting the benefit of a permit. I'm just not sure I'm following that. Not necessarily, Your Honor. I mean, we don't know what would have happened if we hadn't agreed all along to do what EPA has told us to do. I do think you're right, ultimately, that this is bound up in our ability to run the property. And so we very well could have permit-related consequences for refusing to comply with this aspect of the plan. So I don't want to say we would have completely had no consequences if we didn't continue to follow EPA's instructions with respect to cleanup. But I don't think it changes the fact that EPA was directing this part of our activities. And that is why- Can you explain how that's, just this piece, I understand your CERCLA argument, but why is that different from Watson, right? Because they're sort of saying the same thing. You can't sell cigarettes if you don't do this testing, and here's how you got to do it, right? How is that different from the actual facts in Watson? So I don't think you can divorce that from CERCLA, because unlike selling cigarettes- Okay, I understand that. So your argument, I just want to make sure I understand, your argument is dependent upon this sort of secondary argument that because of CERCLA, it's ultimately the government's responsibility. If CERCLA didn't exist, you would agree this is Watson and we're done. I'm not sure. I think CERCLA makes this an easier case, because you have a federal statute that- If you assume CERCLA doesn't exist, explain to me how this is different from Watson. I think we still have an argument that cleaning up contamination is a federal responsibility, and there may be something short of CERCLA on the books in that hypothetical. So I can't go all the way to say that if there were no CERCLA, that this wouldn't be a federal responsibility, because I think if a house burns down in a neighborhood and it's abandoned, the government is going to have some sort of responsibility to ensure that that site does not harm human health. But I think because it's precisely because CERCLA is in place, we know that the federal government has taken on the responsibility for cleaning up contaminated sites, and if they're able to accomplish those objections through a permit holder, that doesn't change the fact that it's governmental or that they're directing that aspect of the permitted activities. If I could pivot for a moment to federal question. So Mr. Hogan spent a lot of time talking about the environmental covenant, and I think that underscores why there is a substantial and disputed federal issue in this case. So what he said is if they withhold consent for the environmental covenant, then we are going to have to go back to EPA, make a showing that we weren't able to obtain that, and then EPA will direct a plan B. And I think the fact that they're trying to proceed in state court and have the state court sit in superintendence over this remedial process that's very much ongoing just underscores the federal interest at play here. And to be clear- How do you address the savings clause? So I think a couple of things. First of all, we're not saying either for purposes of federal officer or for federal question jurisdiction that some of their state claims can proceed. To be clear, under federal officer, all of their state claims can proceed as they're pleaded, we just get a federal quorum for our federal defense. But as to federal question, I think, first of all, the RCRA citizen supervision is broader than the savings clause. Is that the way you're- Is that the way you construe the savings clause? It seems to me the savings clause is suggesting that a person can pursue state causes of action implicitly in state court. There's no federal jurisdiction mandated. It's not exclusive federal jurisdiction under RCRA. Is it? Chief Judge Gregory, may I answer your question? Yes. Judge Mayer, I think that's right if we were making a strictly complete preemption argument. RCRA has not completely preempted the field, but I think there is an argument under both article pleading that what they're actually pleading here is a challenge to our permit and to the judgment that EPA made. And in addition, under- Well, how do they take care of... They're claiming fairly simply that there is a trespass and a nuisance under common law. And they want relief beyond what has been approved under the RCRA process. They want removal so that they can a well to drink water there. What's wrong with that? So, Your Honor, there's nothing wrong with those claims. But if you look at count one and count two of their complaint, where they're asking us to completely cease and desist all operations and asking the state court to sit in superintendence over the remedial activities, that is seeking to usurp EPA's authority- You can answer that in a complaint. That's remedy. The question, they have a cause of action. They're alleging straightforward state causes of action. And it doesn't look like they're purporting to assert a RCRA claim. And as a matter of fact, RCRA recognizes they can assert those causes of action. Now, what's wrong with letting the state handle that? And you can raise, I think the preemption is a mighty powerful argument, maybe. And maybe the sanction might be inconsistent, which can also be a reason to oppose a particular type of sanction that's been imposed. But the problem here is jurisdictional. The question is, is this 1331 rising under the federal law? So, Your Honor, I don't think that you need- We have defenses, preemption, statute of limitations and otherwise, as to their purely state law claims. But if you look at, I'll direct you specifically- That's a defense too, isn't it? That's right. It may be a very good defense. That's right, Your Honor. And we're not saying that that's the grounds for federal question removal. And if I could direct you to count two of their complaint, which doesn't cite any state law, where they're asking for a permanent injunction and asking the state court to sit in supervision over the remedial efforts, that is very much- Those are the way they're pleading the case. I must say, we see this regularly where people assert a cause of action for damages, a cause of action for injunction, which is not good pleading. In other words, those are remedies. They're based on some substantive law, a cause of action. But the fact that that's the remedy they're asking for, the basic allegations in the case is that the state has permitted toxic chemicals to come onto their, or has actually caused toxic chemicals to come onto their property and damage their property. And they want the chemicals removed or whatever they want, whatever the sanction is. But the question is, isn't that a legitimate state cause of action? So again, I mean, we have ordinary defenses to those that don't give rise to federal jurisdiction, but I don't think you can divorce the claims from the Well, sure you can. The range of remedies is something for the court to establish, but the cause of action, you have to add the fact of injury. But after that, what the court designs is damages. It may be no damages or maybe, well, there's tons of defenses. There's preemption defenses. There may be limitations defenses and all these things. And you may have some equities going for you. Your company seems to have been doing very well with the federal government under the pollution laws. And you're not somebody that had just trampled over it and then run away and you're solvent and all the other things. But we're going to a very beginning question of who's going to decide these issues. Anyway, that's probably not a question. I'm telling you what the puzzle is. Thank you, Your Honor. Chief Judge, I just briefly wrap up. Very briefly. Yes, I'm just going to say that precisely because I think within the federal question umbrella, there's room for recognizing the importance of federal interest. And this case satisfies that burden. And we would ask or excuse me, satisfies that standard. And we would ask this court reverse. Thank you. Thank you. Thank you, Miss Mitchell. Mr. Hogan. Again, we cannot come down and reach you as we would love to do, but know very much that we appreciate your arguments and your help with the court in handling these very difficult matters. I wish you well be safe. Take care. Thanks. It was a pleasure to see you. Thank you, Your Honors. Thank you. Bye-bye.
judges: Roger L. Gregory, Paul V. Niemeyer, Julius N. Richardson